UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:17-cv-00146-MOC-DLH

| | | |
|---|---|---|
| STEVEN RAVIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| TYNDALL FEDERAL CREDIT UNION | ) | |
| TYNDALL FEDERAL CREDIT UNION | ) | |
| SECURED SPLIT DOLLAR AGREEMENT | ) | |
| TYNDALL FEDERAL CREDIT UNION | ) | |
| BOARD OF DIRECTORS, | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the court on the defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Transfer (#6). Having considered the Motion and the pleadings in this matter, the court enters the following Order.

**FINDINGS AND CONCLUSIONS**

**I.　BACKGROUND**

This is an ERISA case. Plaintiff Ravin was employed by the Tyndall Federal Credit Union, and the court will label the defendants collectively "Tyndall." Tyndall is based in Panama City, Florida with branches in other locations as well. Ravin worked for Tyndall for over ten years in Florida. After working for Tyndall, Ravin moved to North Carolina.

This case relates to one filed in the Northern District of Florida, which embraces

-1-

Panama City, Tyndall Federal Credit Union v. Ravin, 5:17-cv-160. It is the understanding of the court that this related lawsuit is also proceeding in that judicial district on the same facts as the instant action. That case involves not only the benefits under the ERISA plan which are at issue here, but also involves allegations that Ravin's Separation Agreement was procured through his allegedly fraudulent misrepresentations. (#19) at 4.

In the instant Motion (#6), Tyndall asks the court to dismiss the action filed in this district for a lack of personal jurisdiction. In the alternative, Tyndall requests that the court transfer the case to the Northern District of Florida in the interest of justice. Id.

## II. STANDARDS OF REVIEW

### A. Personal Jurisdiction

Rule 12(b)(2), Federal Rules of Civil Procedure, provides for dismissal where the court lacks personal jurisdiction over a particular named defendant. In the Fourth Circuit, the standard for deciding a motion based on Rule 12(b)(2) was set forth in Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989), where it explained that a plaintiff has the burden to prove personal jurisdiction by a preponderance of the evidence.

When a factual dispute arises as to whether or not jurisdiction exists, the court may either conduct an evidentiary hearing or defer ruling on the matter until it receives evidence on the jurisdictional issue at trial. Id. When a court decides the issue on the record then before it, the court may consider "the motion papers, supporting legal memoranda, affidavits, other documents, and the relevant allegations of the complaint," and the burden is plaintiffs' "to make a mere *prima facie* showing of jurisdiction to survive the

jurisdictional challenge." Clark v. Milam, 830 F.Supp. 316, 319 (S.D.W.Va.1993) (citations omitted). A court must resolve factual disputes in favor of the party asserting jurisdiction for the limited purpose of the *prima facie* showing. Bakker, at 676. Such resolution must include construing all relevant pleadings in a light most favorable to the plaintiff, assume the credibility of any affiant, and must draw the most favorable inferences for the existence of jurisdiction. Id.; see also Thomas v. Centennial Commc'ns Corp., 2006 WL 6151153, at *2 (W.D.N.C. Dec. 20, 2006).

Plaintiffs must show that the exercise of personal jurisdiction over a defendant complies with the forum state's long-arm statute and the constitutional requirements of due process. Grober v. Mako Products, Inc., 686 F.3d 1335, 1345 (Fed. Cir. 2012), reh'g denied (Sept. 14, 2012). Since North Carolina's long-arm statute extends jurisdiction to the outer limits of due process, the jurisdictional analysis merges into a single due process inquiry. Thomas, 2006 WL 6151153, at *2.

### i. General Jurisdiction

To be consistent with the limitations of due process, a defendant must have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Minimum contacts may be established by showing "general" or "specific" jurisdiction. Helicopteres Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984). A court may exercise general jurisdiction over a non-resident defendant if the defendant has contacts with the State that are so "continuous and

systematic" as to render them "essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011).

### ii. Specific Jurisdiction

In the absence of general jurisdiction, a court may exercise specific jurisdiction over the defendant where the cause of action arises out of defendant's activities in the forum state. In analyzing specific jurisdiction over a defendant, courts consider whether: "(1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair." Grober v. Mako Products, Inc., 686 F.3d 1335, 1346 (Fed. Cir. 2012) (citation omitted). Plaintiff has the burden of making a prima facie showing of specific jurisdiction by satisfying the first two elements. The burden then shifts to defendant to show that such assertion of personal jurisdiction is not reasonable and fair. Id.

### B. Transfer of Venue

Title 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Id. Upon a motion to transfer, the moving party carries a heavy burden. Datasouth Computer Corp. v. Three Dimensional Technologies, Inc., 719 F.Supp. 446, 451 (W.D.N.C. 1989). A court's decision to grant a motion to transfer venue

under 28 U.S.C. § 1404(a) is largely discretionary. 3A Composites USA, Inc. v. United Indus., Inc., No. 5:13CV83-RLV, 2014 WL 1471075, at *1 (W.D.N.C. Apr. 15, 2014) (citing Landers v. Dawson Const. Plant Ltd., 201 F.3d 436, 1999 WL 991419, *2 (4th Cir. 1999)). In exercising such discretion, the court applies a balancing test and considers various factors in deciding whether transfer is appropriate. Jim Crockett Promotions, Inc. v. Action Media Grp., Inc., 751 F.Supp. 93 (W.D.N.C. 1990). The factors to be considered include:

> 1. The plaintiff's initial choice of forum;
> 2. The residence of the parties;
> 3. The relative ease of access of proof;
> 4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;
> 5. The possibility of a view by the jury;
> 6. The enforceability of a judgment, if obtained;
> 7. The relative advantages and obstacles to a fair trial;
> 8. Other practical problems that make a trial easy, expeditious, and inexpensive;
> 9. The administrative difficulties of court congestion;
> 10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with state law that must govern the action; and
> 11. The avoidance of unnecessary problems with conflict of laws.

Id. "The above factors fall into three categories: (1) factors that favor neither party, (2) factors that favor Defendant, and (3) factors that favor Plaintiff." Cohen v. ZL Technologies, Inc., No. 3:14-CV-00377-FDW, 2015 WL 93732, at *2 (W.D.N.C. Jan. 7, 2015) (citing Crockett, 751 F. Supp. at 98). The court must analyze the eleven factors based on quality, not just quantity. Id. (citing Crockett, 751 F. Supp. at 96). In most cases,

the plaintiff's choice of forum should be given significant weight, and should not be disturbed unless the balance is strongly in favor of transfer. Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). A motion should not be granted if transfer "would merely shift the inconvenience from the defendant to the plaintiff, or if the equities lean but slightly in favor of the movant after all factors are considered." Jim Crockett Promotions, Inc. v. Action Media Grp., Inc., 751 F. Supp. 93, 95 (W.D.N.C. 1990). On a motion to transfer, the facts as alleged in the complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. Century Furniture, LLC v. C & C Imps., Inc., No. 1:07cv179, 2007 WL 2712955, at *2 (W.D.N.C. Sept. 14, 2007).

If the court finds that the cases is filed in the wrong district, the court may dismiss or transfer the case to the appropriate district pursuant to 28 U.S.C. § 1406(a).

## III. DISCUSSION

The court is asked to make several determinations:

1) Whether the court may properly exercise personal jurisdiction over Tyndall;

2) Notwithstanding the appropriateness of venue in this district,[1] whether the action should be transferred to another judicial district in the interests of justice and for the convenience of the parties, pursuant to § 1404; and

---

1     In resolving whether to transfer venue, the court will assume that the Western District of North Carolina is an appropriate, given that the court may exercise personal jurisdiction over Tyndall under ERISA.

The court will consider each question *seriatim*.

### A. Personal Jurisdiction

ERISA contains a nationwide service of process provision that provides:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2); see also Hall v. Tyco Int'l Ltd., 223 F.R.D. 219, 229 (M.D.N.C. 2004). The provision has been interpreted as a "national contacts test." Strategic Outsourcing, Inc. v. Commerce Benefits Group Agency, Inc., 54 F.Supp.2d 566, 570 (W.D.N.C. 1999). Accordingly, under this "national contacts test, "if the defendant in an ERISA case has minimum contacts with the United States as a whole, so long as the court's exercise of jurisdiction over the defendant would comport with the Due Process Clause of the Fifth Amendment, the court may exercise jurisdiction over the defendant." Hall, 223 F.R.D. at 229.

Proper service of process is critical for this nationwide service of process statute. Tyndall claims it was not properly served as of the filing of its Motion to Dismiss. (#6) at 1 n. 1. Plaintiff has provided an affidavit and Federal Express receipt of service. (#12). Service by such means is appropriate under Rule 4, within the service of process options afforded by state law.

Given that service of process was proper, the court next asks whether the defendants have minimum contacts with the United States and whether the exercise of

personal jurisdiction would offend the Fifth Amendment's Due Process protections. All defendants undisputedly have minimum contacts with the United States. In ERISA suits, courts use the following the Fifth Amendment standard, in which defendants must demonstrate that "the district court's assertion of personal jurisdiction over [them] would result in 'such extreme inconvenience or unfairness as would outweigh the congressionally articulated policy' evidenced by a nationwide service of process provision." Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015) (Diaz, J.) (citation and quotation omitted).

Defendants have the burden to demonstrate that the exercise of personal jurisdiction in this ERISA case would violate their Fifth Amendment rights. Such burden has not been met here. While there is inconvenience in the context of Section 1404 (as discussed infra), the court finds that there is no demonstration of an inconvenience of constitutional magnitude. With each of the elements satisfied for proper personal jurisdiction pursuant to ERISA's nationwide service of process provision, the court finds that the exercise of personal jurisdiction over Tyndall in this district is appropriate.

    **B.**    **Transfer of Venue**

Even where venue is appropriately found in this district, the court may transfer the case to another appropriate district, pursuant to § 1404(a). Within this district, motions to transfer venue are analyzed using the eleven Crockett factors noted above. While the moving party bears a heavy burden on a motion to transfer venue, Datasouth Computer Corp. v. Three Dimensional Technologies, Inc., 719 F.Supp. 446, 451 (W.D.N.C. 1989),

a court's decision to grant a motion to transfer venue under 28 U.S.C. § 1404(a) is largely discretionary. 3A Composites USA, Inc. v. United Indus., Inc., No. 5:13CV83-RLV, 2014 WL 1471075, at *1 (W.D.N.C. Apr. 15, 2014).

### 1. *Initial Choice of Forum*

The first Crockett factor is the plaintiff's initial choice of forum. In this case, the plaintiff initially chose the Western District of North Carolina as its preferred forum. Although the choice of forum by the Plaintiff is ordinarily given considerable weight, that weight is diminished when the conduct giving rise to the complaint did not occur in the forum. Hames v. Morton Salt, Inc., 3:11cv570-MOC-DSC, 2012 WL 1247201, at *2 (W.D.N.C. Apr. 13, 2012) (citing Parham v. Weave Corp., 323 F.Supp.2d 670, 674 (M.D.N.C. 2004)). Indeed, the weight given to the plaintiff's choice of forum is proportionate to the relation between the forum and the cause of action. Parham, 323 F.Supp. 2d at 674. In the ERISA context, the Fourth Circuit has instructed that plaintiff's initial choice of forum is to be granted somewhat greater weight than would typically be the case, given ERISA's liberal venue provision. Plumbing Servs., 791 F.3d at 444.

Here, this factor weighs in favor of the plaintiff and his desire to retain the case in this district, where he now resides. This factor is far from dispositive. While plaintiff chose to file in this district, Tyndall argues that the Florida lawsuit would have been filed first but for plaintiff's pre-filing conduct. (#19) at 1. Tyndall labeled Ravin's actions "procedural gamesmanship."

This court is wary of races to the courthouse and forum shopping. Learning

Network, Inc. v. Discovery Commc'ns, Inc., 11 F. App'x 297, 301 (4th Cir. 2001) ("It has long been established that courts look with disfavor upon races to the courthouse and forum shopping.") (unpublished). While the court respects the plaintiff's initial choice of forum, the court appreciates that Tyndall has a similar interest as plaintiff in the pending suit in the Northern District of Florida on the same facts. Given the Fourth Circuit's guidance in Plumbing Services, the court will give the plaintiff's initial choice of forum substantial weight in its analysis of whether to transfer venue.

### 2.     *The Residence of the Parties*

In analyzing the second Crockett factor, the court examines the residence of each party. It is undisputed that the Ravin is now a resident of this district and the Tyndall defendants are not.[2] It appears that the Tyndall defendants reside within the Northern District of Florida. Given that plaintiff is a resident of this district, the factor will weigh toward retaining the case in the Western District of North Carolina.

### 3.     *The Relative Ease of Access of Proof and the Availability and Costs of Witnesses*

In examining the third and fourth Crockett factors, the court analyzes the relative ease and access to the evidence in the suit. Traditionally, "[t]he convenience of witnesses, particularly nonparty witnesses important to the resolution of the case, is often cited as the most significant factor in ruling on a motion to transfer … One strong

---

[2] The plaintiff argues that the residence of a third-party "BFB," is to be taken into account. (#14) at 3. Not only is BFB not a party to this lawsuit, it is also not the "Plan Administrator" under ERISA, by plaintiff's own admission. Id.

argument against transfer is that the original forum will be the most convenient for the witnesses. And when transfer will better serve the convenience of the witnesses, the motion under Section 1404(a) is more likely to be granted." 15 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3851 (4th ed.) (collecting cases).

The court notes that the party asserting witness inconvenience has the burden to proffer sufficient details respecting the witnesses and their potential testimony to determine the materiality of evidence and the degree of inconvenience. Capital One Fin. Corp. v. Drive Fin. Servs., L.P., 434 F. Supp. 2d 367, 375-76 (E.D. Va. 2006).

Given that the Plan Administrator, all defendants, and Tyndall's employees reside in the Northern District of Florida, most of the witnesses and documentary evidence in this case is likely to reside there as well. Defendants have supplied a declaration (#7-1), which provides that the Plan is administered in that district, the Tyndall Board of Directors meets there, and the independent auditors reside outside of North Carolina.

This dispute arises out of a Separation Agreement and ERISA plan benefits earned in the Northern District of Florida. While the court understands that the typical ERISA dispute is resolved on the administrative record, defendant's claim (or counterclaim here) that the benefits were obtained based on fraudulent representations will require discovery. The majority of that evidence—both testamentary and documentary— is likely to reside outside this district. These factor heavily weigh toward transfer.

### 5. *View by the Jury, Enforceability of a Judgment, and Relative Advantages / Obstacles to Fair Trial*

Taking three Crockett factors together, the court evaluates whether transfer affords the possibility of a view by the jury; allows for the enforceability of a judgment, if obtained; and balances the relative advantages and obstacles to a fair trial. As to the first two of these three factors, it is clear that the Northern District of Florida, as a sister federal district court, can enforce judgments and affords the parties the possibility of a jury trial, which would favor transfer on both factors.

As to any relative obstacles or advantages for a fair trial, it is not necessary to probe as to whether this district or that of Northern District of Florida would provide one side or the other any "home field" advantage, as any advantage would go both ways. See Rice v. Bellsouth Adver. & Pub. Corp., 240 F. Supp. 2d 526, 530 (W.D.N.C. 2002). The court therefore finds that this factor is neutral.

### 6. *Practical Problems and Administrative Difficulty*

Examining two Crockett factors together, the court evaluates the administrative difficulties of court congestion and practical problems affecting trial expediency and expense.

As for court congestion, this factor favors transfer. It is true that the Northern District of Florida is presently facing a judicial emergency. See JUDICIAL EMERGENCIES, UNITED STATES COURTS, http://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies. Even so, the related case is presently being considered

within that district. It will not add to court congestion to transfer the case and recommend that it be consolidated with the already-filed case. However, having two actions considered on the same facts in two judicial districts is inefficient and adds to court congestion in both districts.

With regard to practical problems, <u>Crockett</u> itself noted that motions to transfer are not to be granted merely to shift the inconvenience from one party to another. 751 F. Supp. at 95. With that noted, it is clear that either forum there will be practical problems such as travel and accommodations for the parties and their counsel. <u>See</u> <u>Rice</u>, 240 F. Sup.. 2d at 530. Panama City, Florida and Asheville, North Carolina are not major metropolitan areas, but each have strong tourism-based local accommodations. Even so, the clear focus of this case involves activities, evidence, and witnesses in the Northern District of Florida. The court is concerned with requiring Tyndall and its employees to travel and accommodate one person (Ravin) due to his recent move. Instead of Hendersonville, North Carolina, Ravin could have moved to Alaska. In such a hypothetical, an Alaska-based court would not be predisposed to handle a matter involving a former employee moved out of Florida and then sued the Florida-based employer about the Florida-based plan and one or more agreements, <u>see</u> (#7-2), entered into in Florida. Similarly here, a North Carolina court must look to the convenience to the parties and the center of gravity of this case. While the potential inconvenience suffered by Tyndall does not offend the Fifth Amendment's protections, <u>see</u> III.A above, it will likely result in substantial practical problems in litigating this matter outside of the

-13-

Northern District of Florida.

### 6. *Interest in Localized Controversies Settled At Home and Avoidance of Conflict of Laws Issues*

The two remaining Crockett factors involves the localized adjudication of disputes and avoidance of issues with conflicts of laws. The center of gravity in this case is Florida. While ERISA is a federal statute, Ravin, a former employee of a Florida company, has brought suit about a Florida plan, administered in Florida. Moreover, the contracts related to this case are Florida contracts. Florida has a strong interest in this dispute, especially as Ravin accrued the benefits at issue there, the plan is administered there, and the contract governing those benefits is a Florida contract (#7-2). The agreement (#7-2) included a choice of law clause, ¶ 9.5, that the contract would be governed by Florida law.

The court is also aware of the Crockett factor to avoid conflicts of law. The related case in the Northern District of Florida involves several state law claims, including Common Law Fraud in the Inducement. (#14) at 2 n. 1. Florida law should govern this case, for the reasons given above. Accordingly, the risk of conflicts of law is best avoided by having a Florida-based court handle this matter, rather than a court located elsewhere.

### 7. *Conclusion*

Notwithstanding proper venue in the present district, the court has the discretion to transfer venue in the interest of justice. This discretion is guided by evaluation of certain factors outlined in Crockett. Applying the Crockett factors to the instant case, the court

finds several do favor retention of the case in this district, namely plaintiff's residence and plaintiff's initial choice of forum. A plurality of factors favor transfers to a more appropriate venue, that of the Northern District of Florida, Panama City Division. These factors present a compelling case for transfer, notably the existence of another suit in the Northern District of Florida where the matter is more properly handled. The court has also considered the factors qualitatively and the factors favoring transfer substantially outweigh the factors favoring retention. Based on both a quantitative and qualitative analysis, the case will be transferred.

## IV. CONCLUSION

For the reasons stated herein, the court finds that further maintenance of this action is not appropriate in this district. Appropriately, it will transfer the action to the Northern District of Florida, Panama City Division. The court recommends that its sister federal district court consolidate this matter, pursuant to Rule 42, with the pending case of <u>Tyndall Federal Credit Union v. Ravin</u>, 5:17-cv-160-MCR-GRJ. The actions involve the same questions of fact, and the court would encourage its colleague to consolidate the two cases.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1) Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (#6) is **DENIED**;

2) Defendant's Alternative Motion to Transfer Venue (#6) is **GRANTED;**

3) The instant action is **TRANSFERRED** to the Northern District of Florida, Panama City Division;

4) Plaintiff's Motion to Enjoin the Second-Filed Action (#3) is **DENIED**, as the case will be transferred in the interest of justice.

Signed: August 10, 2017

Max O. Cogburn Jr.
United States District Judge